EGAN, C.J.
*2 Defendant appeals a judgment of conviction for one count of first-degree online sexual corruption of a child, ORS 163.433, contending that the trial court erred in denying his motion for judgment of acquittal. Defendant argues that, as the term is defined in ORS 163.431(5), he did not "solicit" a child "because the subject matter of minority age did not arise until after the negotiations for sexual contact were complete." Ultimately, defendant contends that, after he learned that the person he had arranged to meet for sex was a child, he merely passively acquiesced to engage in sexual contact with her. We disagree. Because defendant used text messages to request a child to engage in sexual contact after he knew her age, a reasonable factfinder could find that defendant knowingly used an online communication to solicit a child to engage in sexual contact. We therefore affirm.[1]
Because it is helpful to better understand the parties' dispute, we pause here to set out the statutes at issue. ORS 163.433 provides that a person commits first-degree online sexual corruption of a child when that person commits second-degree online sexual corruption of a child and "intentionally takes a substantial step toward physically meeting with or encountering the child." A person commits second-degree online sexual corruption of a child if (1) a person who is 18 years of age or older (2) for the purposes of arousing or gratifying the sexual desire of the person or another person (3) knowingly uses an online communication[2] to solicit a child to *131 engage in sexual contact or sexually explicit conduct and (4) offers or agrees to physically meet with the child. ORS 163.432(1). "Solicit" is statutorily defined as "to invite, request, seduce, lure, entice, persuade, prevail upon, coax, coerce or attempt to do so." ORS 163.431(5). Only the third *3 element of the crime-specifically, solicitation of a child to engage in sexual contact-is at issue here.
We turn to the facts. While working as an undercover officer for the Eugene Police Department and as part of a sting operation focused on targeting individuals who would purchase sex with a minor, Detective Burroughs posted an advertisement on Backpage.com. Burroughs described Backpage.com as "a classified advertising website" that has "a multitude of different services," including advertisements for prostitution. The advertisement was located under the website's "adult section" and "escorts" subsection. The advertisement was titled, "Pure platonic fun-18" and stated:
"Hi Guys, my name is Sam, I'm seventeen years old, attractive and looking for a thoughtful, kind, mature man to share companionship, conversation, advice and kindness. I'm young in age, but older at heart. If you're interested in platonic fun, text me at [phone number]. Serious inquiries only please."
The advertisement included photos of "what appeared to be a teenage girl" and, below the posting, provided, "Poster's age: 18."
Burroughs explained that, in order to post an advertisement on Backpage.com, posters must affirm that they are at least 18 years of age. Otherwise, the poster is reported to the National Center for Missing and Exploited Children and their Internet Protocol address is blocked.
Approximately one hour after Burroughs posted the advertisement, defendant text-messaged a reply to the number provided, stating, "Hey Sam. Saw your ad I'd be down for hanging out what do you got in mind. When are you available?" Burroughs-texting as "Sam"-and defendant exchanged messages regarding their availability over the next couple of days. When Burroughs asked defendant "what do u like," defendant responded, "I'm pretty open. What's available?" Burroughs explained that meeting the next day would be best, stating "I'll b home alone, mom in jail right now. Gotta make rent." Subsequently, defendant and Burroughs exchanged the following text-messages:
*4 Defendant: "Sounds like a plan"
Burroughs: "K"
Defendant: "Sorry bout that. How much do I need to bring $ $"
Burroughs: "What do u want"
Defendant: "Straight up nothing fancy. Maybe some pics too"
Defendant: "And hate to admit it but if those pics are real might be quick money. Lol"
Burroughs: "How about 200. No face pics though"
Defendant: "Hoping for GFE if that's cool."[3]
Defendant: "Little sleep. Are the pics on line really you? Pics would be just you. No action shots."
Burroughs: "That's cool"
Burroughs: "Yes the pics r me"
Defendant: "Your amazing can you cut me a break $125 I won't waste your time"
Burroughs: "Can u bring the condoms and a coke for me"
Defendant agreed to bring a coke and asked "Sam" whether she was "affiliated with any law enforcement agency" or "any news or reporting people." Defendant asked "Sam" to send "a dirty pic or two to hold" him over until they met the next day. Burroughs replied, "Can't do it. Gotta pay to see."
The next day, defendant text-messaged "Sam" to clarify the meeting time and to ask for her address. After a series of messages regarding timing, the following text-message exchange ensued:
Burroughs: "Sweet 15"
*132 Defendant: "Huh? "
Defendant: "Sweet 15 what?"
Burroughs: "Sorry, that was supposed to go to my uncle. He was wishing me a happy birthday."
*5 Defendant: "Is it your birthday today? Mine is Saturday. Well happy birthday."
Burroughs: "Thanks u r sweet"
Burroughs: "Yes it is my birthday"
Defendant again clarified the time that "Sam" would be available and again asked for her address. About an hour later, Burroughs texted defendant:
Burroughs: "Just getting home. Promise your not a cop"
Defendant: "Yes I Promise I'm not a cop."
Defendant: "So your about home? Can I head over?"
Burroughs: "My mom's an idiot and went to jail. I can't go to a foster shelter. So I'm a bit paranoid. Sorry. Our address is ***."
Defendant: "[repeating address] I'm good to come over now?"
Burroughs: "Yes, remember my coke and condoms. You only turn 15 once [smiley face emoji]."
Defendant: "K I'll be there in just a couple minutes I'm close"
Burroughs: "What's you're name by the way"
Defendant: "George"
Almost immediately after defendant's response, he arrived at the agreed-upon residence. Defendant knocked on the door and was taken into custody.
At the close of the state's case, defendant moved for a judgment of acquittal on the ground that a reasonable trier of fact could not find beyond a reasonable doubt that defendant knowingly used an online communication to solicit a child to engage in sexual contact or sexually explicit conduct. Defendant argued that there had been "no discussion of any type of overt sexual activity at all" and "there is no evidence that he solicited" the child to engage in such activity. The trial court denied his motion and a jury subsequently found defendant guilty of first-degree online sexual corruption of a child.
*6 On appeal, defendant assigns error to the trial court's denial of his motion for judgment of acquittal. "When a defendant's challenge to the legal sufficiency of the state's evidence depends upon the meaning of the statute defining the offense, we review the trial court's construction of the statute for legal error." State v. Holsclaw , 286 Or. App. 790, 792, 401 P.3d 262, rev. den. , 362 Or. 175, 406 P.3d 610 (2017). "Then, based on the proper construction of the statute, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt." Id.
We begin with the text and context of the statute. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). The parties' dispute turns on the meaning of "solicit," which, as noted above, is defined by ORS 163.431(5) as follows: " 'Solicit' means to invite, request, seduce, lure, entice, persuade, prevail upon, coax, coerce or attempt to do so."
Defendant asserts that the legislature's choice of the term "solicit" limits the prohibited conduct to seeking out, in the first instance, sexual contact with a person under the age of 16. Here, according to defendant, after he knew of Sam's age, he merely "passively acquies[ced]" to engage in sexual contact with her rather than "actively reaching out" to "solicit" sexual contact with her.
We disagree that defendant's conduct after he knew Sam's age was mere passive acquiescence to engage in sexual contact. Rather, viewed in context and in the light most favorable to the state, defendant's text messages asking "[c]an I head over?" and "I'm good to come over now?" were requests to engage in sexual contact; that is, they were solicitations within the meaning of the statute. The fact that the initial plan to engage in sexual contact was made before defendant knew Sam's age does not prevent his later requests to engage in sexual contact from constituting solicitation as defined by the statute.
In sum, the state presented sufficient evidence for a reasonable factfinder to find that defendant knowingly used an online communication to solicit a child to engage *7 in sexual contact. Accordingly, the trial court did not *133 err in denying defendant's motion for judgment of acquittal.
Affirmed.

We reject defendant's second assignment of error, raised in a supplemental pro se brief, without discussion.

" 'Online communication' means communication that occurs via telephone text messaging, electronic mail, personal or instant messaging, chat rooms, bulletin boards or any other transmission of information by wire, radio, optical cable, cellular system, electromagnetic system or other similar means." ORS 163.431(2).

Burroughs testified that "GFE" stood for "girlfriend experience," which he understood to mean "that the girl is available to kiss and to provide oral sex without a condom."