EGAN, C. J.
*545 *7 After a bench trial, defendant was convicted of two counts of third-degree sodomy, ORS 163.385, and two counts of first-degree online sexual corruption of a child, ORS 163.433. On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) on the two online sexual corruption charges.[1] For purposes of the offense of online sexual corruption of a child, "child" means "a person who[m] the defendant reasonably believes to be under 16 years of age." ORS 163.431(1). Defendant argues that no reasonable factfinder could find beyond a reasonable doubt that he "reasonably believed" that the victim in this case was under 16. We agree with defendant and, thus, reverse his convictions for first-degree online sexual corruption of a child.
In reviewing the denial of an MJOA, we state the facts in the light most favorable to the state. State v. Greene , 283 Or. App. 120, 121, 388 P.3d 1132 (2016). Defendant met the victim, B, on the online dating site "Boy Ahoy." At the time, B was 15 years old and defendant was 41. In order to use the site, B lied and said that he was 18. At trial, B testified that he used "gay chat apps" to explore his feelings, and that he communicated with multiple men through several different "apps." B said that he was not sure he could physically pass for 18, but that he hoped that he would be accepted as 18 by other users of the apps. B's mother testified that at the time he was using the apps, B was around five feet 10 inches or five feet 11 inches tall, was very thin, had very little body hair and wore braces. She was unaware of anyone ever mistaking him for being older than he was. Detective Dolyniuk, the lead investigator in B's case, testified that B's appearance was consistent with his age.
For several months, B and defendant communicated very frequently over cell phone calls, text messages, Skype video chats, and other online communication applications. B testified that defendant "[p]robably just asked [him] once if [he] was actually above age and [B] lied about that." Defendant and B "chatted" about sexual things, exchanged *8 nude photos, and exchanged phone numbers. Defendant asked B to send him nude and clothed photographs, which B did. B also sent nude photographs to defendant without being asked.
At some point, B and defendant arranged to meet in person "to get to know each other better and have sex." They talked about the meeting ahead of time and agreed that they would engage in sexual activity with each other. They agreed that defendant would pick B up in the parking lot of B's high school. B testified that he had told defendant that he was held back or had started late, so he was 18 and in his last year of high school. B also said that he "may have" lied and told defendant that his license was suspended, and that was why he could not drive. Ultimately, on two separate occasions, defendant picked B up at his high school, and the two went to a Motel 6 and engaged in sexual activity. Defendant continued to correspond with B after the meetings.
In January 2013, B's mother contacted the police regarding concerns she had about B. She related that she had noticed "behavior changes" and "withdrawal," and that she had found letters written to men crumpled up in his room. She had also logged on to B's computer and found communications between B and other men. When she asked B about defendant, B cried and said, "He's a bad one." B's mother turned B's phone and computer over to the police. Dolyniuk testified that B's phone had an image of defendant on *546 it, as well as over 6,800 text messages between B and defendant.
B testified that, when his parents found out about his online activities, he tried to warn defendant. Dolyniuk recovered one communication that had occurred over the messaging function of the application "Words With Friends" around that time, in which B told defendant, "My parents are on to me." The following conversation ensued:
"[DEFENDANT:] Oh, shit. Are you okay?
"[B:] No.
"[DEFENDANT:] I'm sorry. Can you meme me or call?
"[B:] I definitely can't call anyone out of state.
*9 "[DEFENDANT:] Okay. Send me an e-mail.
"[B:] I pretty much just told you what's going on. There's nothing more to it than that.
"[DEFENDANT:] Oh, okay, I won't push it then. I'm just concerned for your well-being.
"[B:] You should be concerned about yourself as should the other guys I've been talking to.
"[DEFENDANT:] What's going on? Are your parents coming after me?"
Eventually, defendant asked B if his parents had defendant's name. B said, "Yes," and stated that he had told his parents that he would "stop talking to men."
At the close of the state's case, defendant moved for a judgment of acquittal on the two counts of online sexual corruption of a child on the ground that, even in the light most favorable to the state, the evidence did not support a verdict of guilty. Defendant argued that the state had failed to prove beyond a reasonable doubt that he "reasonably believed that the person that he had this online communication with was under 16." Defendant contended that the facts-specifically, that B lied about his age, was around five feet 10 inches tall, and told defendant that his license was suspended and that he was held back in school-were insufficient to support a finding that defendant reasonably believed B was under age 16. The state responded that B "lied in order to protect the defendant" and that a factfinder could reasonably infer that "defendant knew how old [B] was." The state argued that the Words With Friends conversation further supported that inference because, when defendant learned that B's parents had found out about the relationship, his answer was, "Are they coming after me?" The state posited, "Why on earth would the defendant be concerned about [B's] parents coming after him if he didn't know that this boy was underage[?]" The state argued that that conversation showed that defendant "absolutely knew that B was under 16." The court agreed with the state and denied defendant's MJOA.
After the denial of his MJOA, defendant testified. Defendant said that he stated in his profile on "Boy Ahoy"
*10 that he was looking for men ages 18 to 35. He testified that he had asked B about his age "a few different times," including one time particularly because of B's "rosy cheeks." Defendant said that B had old him that he was 18, that he was attending community college for forensics, and that his cheeks could be explained by a skin condition. Defendant stated that he always believed B was 18 until B told him otherwise several weeks after their second meeting at the Motel 6. Defendant testified that he picked B up at his high school because B had said that his sister had his car and the high school was close to his house. After closing arguments, the court found defendant guilty on all counts.
On appeal, "[w]e review the denial of an MJOA for whether a rational factfinder could find, after viewing the evidence in the light most favorable to the state and making reasonable inferences and credibility choices, that the state proved every element of the offense beyond a reasonable doubt." State v. Davis , 261 Or. App. 38, 39, 323 P.3d 276 (2014). The statute at issue in this case, ORS 163.433, provides that a person commits first-degree online sexual corruption of a child when that person commits second-degree online sexual corruption of a child and "intentionally takes a substantial step toward physically meeting with or encountering the child." The elements of second-degree online sexual corruption of a child are as follows:
*547 "(1) a person who is 18 years of age or older (2) for the purposes of arousing or gratifying the sexual desire of the person or another person (3) knowingly uses an online communication to solicit a child to engage in sexual contact or sexually explicit conduct and (4) offers or agrees to physically meet with the child ."
State v. Lewis , 292 Or. App. 1, 2, 423 P.3d 129 (2017), rev. den. , 363 Or. 744, 430 P.3d 566 (2018) (emphases added; footnote omitted). "Child," for purposes of ORS 163.433, is statutorily defined as "a person [whom] the defendant reasonably believes to be under 16 years of age." ORS 163.431(1). As noted above, the only issue in this case is whether, viewed in the light most favorable to the state, the evidence would permit a rational factfinder to find beyond a reasonable doubt that defendant "reasonably believed" B to be under 16 years of age.
*11 The parties generally reprise the arguments they made below, but point to additional facts to support their respective positions. Defendant acknowledges that B's appearance was "consistent" with his true age of 15, and he concedes that a factfinder could reasonably infer that defendant believed that B was under 18. However, defendant argues that, due to the "natural variation between people," no factfinder could look at B and find, beyond a reasonable doubt, based solely on B's appearance, that defendant reasonably believed B to be under 16. The state, on the other hand, encourages this court not to "discount the trial court's opportunity" to observe B's "youthful" appearance on the stand and notes that B's mother was "unaware of any time in which someone mistook B for being older than he was." The state also encourages us not to discount the trial court's opportunity to assess defendant's credibility, particularly with regard to defendant's own testimony. Finally, the state argues that defendant's meetings with B were "clandestine" and, thus, that defendant "acted like he believed he was having sex with someone under sixteen years of age and chose not to question B's age in order to maintain plausible deniability."
Although neither party has presented us with statutory construction arguments or legislative history, it is helpful to briefly discuss the legislative history of the statutory provision defining "child" for purposes of this offense. ORS 163.433 was enacted "in response to the internet predator issue." Testimony, Joint Subcommittee on Public Safety, HB 3515, June 15, 2007 (statement of Senate Judiciary Committee Counsel Darian Stanford). The legislature included the definition of "child" so that it would be no defense if the "child" with whom a defendant contacted online was actually a police officer conducting a sting. Id. Thus, the victim's actual age is not an element of the crime; rather, the element is the age that the defendant reasonably believes the victim to be.
In light of that history, under the statute, the state must first prove that the defendant subjectively believed the victim to be under the age of 16. Then, after establishing that belief, the state must prove that the defendant's belief was objectively reasonable .
*12 In this case, the evidence fails on the subjective prong. In other words, the record does not permit a factfinder to find beyond a reasonable doubt that defendant actually believed that B was under 16. The state has produced evidence from which a rational factfinder could infer that defendant believed B to be under 18. For example, there is evidence that defendant knew that B was still in high school, that B looked younger than 18, and that defendant asked if B's parents were going to "come after him" after learning about their communications. From those facts, a rational factfinder could infer that defendant believed that B was under 18 years old and, thus, that his sexual contact with B was potentially criminal. See ORS 163.415 (The crime of sexual abuse in the third degree is established if a person "subjects another person to sexual contact and * * * the victim is incapable of consent by reason of being under 18 years of age."); see also ORS 163.315(1) ("A person is considered incapable of consenting to a sexual act if the person is * * * [u]nder 18 years of age.") However, the statute at issue here requires that the state prove that defendant believed that B was under 16, not 18. No reasonable *548 factfinder could infer from this record that defendant believed that B was specifically under 16, rather than more broadly under 18.
We do not second guess the trial court's first-hand observations and we defer to the trial court's credibility findings. State ex rel. Juv. Dept. v. Smith , 185 Or. App. 197, 228, 58 P.3d 823 (2002), rev. den. , 335 Or. 402, 68 P.3d 231 (2003). However, here, we agree with defendant that based on appearance alone, a rational factfinder could not find, beyond a reasonable doubt, that defendant believed that B was 15 years old, versus 16 or older. The evidence in this case was that B's appearance "was consistent" with his age of 15 and that no one had ever, to B's mother's knowledge, mistaken him for being older than he was. Evidence that a 15-year-old boy's appearance is consistent with his age amounts to little more than evidence that the boy looks like a teenager. And that limited inference reveals the issue at the heart of this case: small differences in age become increasingly difficult to distinguish with the passing of years; while few would confuse a newborn child for a one-year-old, the same is not true for a 29 versus 30-year-old. In our view, B's actual age, together *13 with the minor difference in apparent age on which the state's theory depended-that defendant must have believed him to be 15 years old as opposed to 16-puts this case in the latter category. By the time an average child reaches age 15, it is not possible to discern from appearance alone whether the child is 15 or 16. As such, no reasonable juror could find, beyond a reasonable doubt, that defendant subjectively believed that B was specifically 15, rather than 16, based solely on B's appearance. Because no reasonable juror could make that finding on this record, the trial court erred in not granting defendant's motion for judgment of acquittal, with respect to the charges that depended on the state proving that defendant reasonably believed that B was under 16 years old.
Convictions for first-degree sexual corruption of a child reversed; remanded for resentencing; otherwise affirmed.

Defendant does not challenge his convictions of third-degree sodomy.